UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:15-CV-00039-D

| | |
|---|---|
| **Robert Howard**, | |
| Plaintiff, | |
| v. | **Order** |
| **College of the Albemarle & Kandi Deitemeyer**, | |
| Defendants. | |

Robert Howard, proceeding *pro se*, alleges a number of claims against the College of Albemarle ("COA"), a North Carolina community college, and Kandi Deitemeyer, the president of COA. Before the court are a number of discovery motions: Howard's Motion to Compel Answers to His Requests for Production and Interrogatories (D.E. 14); Howard's Motion to Disqualify Counsel (D.E. 14); Defendants' Motion to Strike Howard's Replies (D.E. 21); Defendants' Motion to Compel Production of Howard's Medical Records (D.E. 26); and (4) Howard's Motion to Amend Scheduling Order and to Compel Defense to Allow Deposition of Attorney (D.E. 30). On July 14, 2016, the court held a hearing on all pending discovery motions.

After reviewing the docket and the arguments of the parties, the court: (1) grants in part and denies in part Howard's Motion to Compel; (2) denies Howard's Motion to Disqualify Counsel; (3) grants Defendants' Motion to Strike; (4) grants Defendants' Motion to Compel; and (5) denies Howard's Motion to Amend Scheduling Order and to Compel Defense to Allow Deposition of Attorney. The court also extends the discovery deadline and the dispositive motion deadline to September 28, 2016, and October 28, 2016, respectively. Finally, the court will enter a separate qualified protective order governing Howard's medical records.

## I.    Background

In September 2015, Howard filed a Complaint in Pasquotank County Superior Court alleging that Defendants unlawfully discriminated against him based on his age, gender, and disability; wrongfully terminated him in violation of North Carolina public policy; and engaged in conduct constituting intentional infliction of emotional distress. Soon thereafter, Defendants removed the case to this court and filed an Answer. The undersigned entered a Scheduling Order on December 15, 2015, allowing the parties to conduct up to six depositions each and setting the close of discovery for June 24, 2016. D.E. 13 at 1–2. The parties engaged in some discovery before requesting judicial intervention.

## II.    Discussion

### a.  Defendants' Motion to Strike Replies (D.E. 21)

Defendants request that the court strike Howard's Reply to Defendants' Response to Plaintiff's Motion to Compel (D.E. 19) and his Reply to Defendants' Memorandum in Response to Disqualify Counsel (D.E. 20). Rules 7.1(f)(2) and 26.1(d) of the Local Civil Rules prohibit reply briefs in discovery disputes. Therefore, the court grants Defendants' Motion to Strike Plaintiff's Replies (D.E. 21). Howard's Replies are stricken from the record and shall not be considered by the court.

### b.  Plaintiff's Motion to Compel (D.E. 14)

Howard asserts that Defendants' responses to his Requests for Production 1 through 10 and his Interrogatories 1 through 7 are deficient for various reasons. He requests that the court compel Defendants to produce responsive documents and to provide full answers to his interrogatories. As will be discussed below, Howard's motion will be granted in part and denied in part.

2

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (2014).[1] A discovery request is relevant if it is "reasonably calculated to lead to discovery of admissible evidence." *Spell v. McDaniel*, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984). If a party fails to respond to a request to produce documents pursuant to Rule 34 of the Federal Rules of Civil Procedure, the "party seeking discovery may move for an order compelling ... production ...." Fed. R. Civ. P. 34, 37(a)(3)(B) (2014). However, the court "must limit the frequency or extent of discovery" if it finds that (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," or (3) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(c) (2014). The court has "substantial discretion in managing discovery." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995).

Before filing a motion to compel, the moving party must make a good faith attempt to meet and confer with the party failing to make a disclosure in an effort to obtain the information without judicial intervention. Fed. R. Civ. P. 37(a)(1) (2014); Local Civ. R. 7.1(c), E.D.N.C.; *see also Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 532 (E.D.N.C. 2012). Defendants argue that Howard only met and conferred with them about their responses to (1) his request for his COA emails and electronic calendar (Request for Production 1); (2) his request for his personnel file, the personnel file of Defendant Deitemeyer, and the personnel files of several other individuals (Request for Production 3); and (3) his request for the correspondences

---

[1] Howard filed his Complaint in September 2015. D.E. 5-1. As such, the Federal Rules of Civil Procedure in force at that time govern this discovery dispute. *See* Fed. R. Civ. P. 86(a).

between Defendant Deitemeyer and two other COA employees (Request for Production 10). Audio Tr. of July 14, 2016 Hearing at 2:06:01–26, 2:11:56–21, 2:12:44–52, 2:13:15–53 [hereinafter Audio Tr.]. In response, Howard asserts that he told Defendants in an email that their responses to his other Request for Productions and Interrogatories were incomplete. D.E. 14-3 at 4–5; Audio Tr. at 2:04:49–51, 2:06:01–26. However, Howard failed to specify his concerns (*see* D.E. 14-3 at 4-5; Audio Tr. at 2:12:20–2:14:18) and thus did not comply with the meet and confer requirement with respect to his Request for Production 2, Request for Productions 4 through 9, and Interrogatories 1 through 7. The court therefore denies Howard's motion to compel responses to the aforementioned requests for productions and interrogatories and will address the merits of his motion to compel responses to his Requests for Production 1, 3, and 10.

### i. Request for Production 1

Howard requests that the court compel Defendants to produce his COA electronic calendar and all of the emails associated with his COA email account. Defendants objected to this request but produced 933 pages of responsive emails. They did not produce Howard's COA electronic calendar, an email written by Howard containing a model of a proposed budget for the COA English Department, or emails containing other financial documents. Audio Tr. at 2:39:26–2:40:07. Defendants assert that they were unable to produce these documents because of a server migration that occurred in 2013. D.E. 15-3 at 1–4. At the hearing, they represented to the court that the migration tool that they used did not convert corrupted files, causing a significant number of COA employees to lose data. Audio Tr. at 2:35:50–55; D.E. 15-3 at 1–2. Although Howard's emails and calendar were affected by the conversion, Defendants searched archived emails in other accounts and produced all nonprivileged emails that referenced or named "Robert Howard" or "Bob Howard." Audio Tr. at 2:18:10–40; 2:23:20–39; D.E. 15-3 at 4. They stated

that they were confident that they had produced everything in existence that was not privileged. Audio Tr. at 2:23:53–2:24:21; D.E. 15-3 at 4. After review, the court denies Howard's request to compel Defendants to produce these documents.

Discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (2014). At the hearing, Defendants represented to the court that they produced all nonprivileged, responsive documents in their possession. Audio Tr. at 2:24:10–2:15:18; D.E. 15-3 at 4. Accordingly, the court denies Howard's motion to compel these documents.

### ii. Request for Production 3

Howard next seeks to compel Defendants to produce his personnel file and the personnel files of a number of individuals, including Kandi Deitemeyer. Defendants argue that other employees' personnel files are not relevant and are confidential pursuant to North Carolina General Statute § 115D-29. After review, the court determines that Howard is entitled to his own personnel file and that it is appropriate for Defendants to produce Deitemeyer's personnel file for *in camera* review.

In pertinent part, § 115D-29 of the General Statutes of North Carolina provides that a state community college employee's personnel file is confidential except when (1) requested by the employee, applicant for employment, former employee, or his authorized agent, or (2) requested by a party by authority of a subpoena or proper court order.[2] N.C. Gen. Stat. § 115D-29(a)(1), (4). Although an employee is entitled to his own personnel records, there is a strong public policy interest against the disclosure of other employees' personnel records. *See Blount v.*

---

[2] The statute also excepts the president and other supervisory personnel; members of the board of trustees and the board's attorney; and an official of the federal government, state government, or any political subdivision thereof. N.C. Gen. Stat. § 115D-29(a)(2), (2), (5).

*Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105 (E.D.N.C. 1993) ("It cannot be denied that personal privacy and accurate employee evaluations are important public policy concerns."). However, "disclosure may nevertheless be required where: (1) [the] material is clearly relevant; and (2) the need for disclosure is compelling because the information sought is not otherwise readily available." *James v. Peter Pan Transit Mgmt., Inc.*, No. 5:97-CV-747-BO-1, 1999 WL 735173, at *11 (E.D.N.C. Jan. 20, 1999). Disclosure may also be required when "the files sought are those of employees whose action or inaction has a direct bearing on the Plaintiff's claims or Defendant's affirmative defenses." *Cason v. Builders FirstSource-Se. Grp., Inc.*, 159 F. Supp. 2d 242, 247–48 (W.D.N.C. 2001).

Howard first seeks his "complete and entire personnel files" (D.E. 14 at 5) and, pursuant to § 115D-29, he is entitled to that information. Accordingly, Defendants shall produce Howard's personnel file, except for letters of reference solicited prior to Howard's employment, within 15 days of this order. *See* N.C. Gen. Stat. § 115D-29(a)(1) (stating that a former employer may examine his own personnel file "in its entirety except for letters of reference solicited prior to employment"). If Defendants have already produced the entirety of Howard's personnel file, they are directed to certify as such within 15 days of entry of this Order.

Howard also requests that the court compel production of Deitemeyer's personnel record. Howard's claims of employment discrimination, wrongful termination, and intentional infliction of emotional distress stem from Deitemeyer's alleged conduct towards him. *See* D.E. 5-1 at 117– 70. The court therefore finds that Deitemeyer's personnel records are clearly relevant and the need for disclosure is compelling. However, in order to balance Deitemeyer's privacy interest in her personnel file established by North Carolina law with Howard's right to conduct discovery, the court will conduct an *in camera* review of the personnel file to determine whether it contains

any documents to which Howard is entitled. Accordingly, the court directs Defendants to submit Deitemeyer's personnel record to the court as outlined at the conclusion of this order within seven days of this order.

Additionally, Howard seeks the personnel records of Joseph DeStefano, Dennis Smith, Teresa Harris, Lisa Johnson, and Sandra Strickland. Howard's Complaint mentions the conduct of Harris and DeStefano, but their conduct has no "direct bearing" on Howard's claims for relief. *See* D.E. 5-1 at 117–70.[3] Howard makes no effort to assert otherwise nor does he state his reasons for wanting the records of DeStafano, Smith, Harris, Johnson, or Strickland. Accordingly, the court denies Howard's motion to compel these documents.

Howard's final request for personnel records includes the records of eleven different individuals for "comparat[ive] purposes." He generally asserts that the records "are necessary to show differences in how employees were treated" (D.E. 14 at 7), but does not assert what the records may show or how his treatment differed from other employees' treatment. This general allegation precludes the court from determining whether the records are relevant and whether the need for disclosure is compelling. Accordingly, the court denies Howard's motion to compel these documents. *See Cason*, 159 F. Supp. 2d at 248 (denying a plaintiff's request for personnel records when he only generally alleged that "examination of the subject files might reveal a difference in the manner in which [the defendant] disciplined [him] versus white employees").

---

[3] Although Howard's Complaint alleges facts about the conduct of Harris (*see* D.E. 5-1 at ¶¶ 12, 16, 20–21, 23–26), his prayer for relief focuses on the actions of Deitemeyer (*see id.* at ¶¶ 117–70). Accordingly, the court determines that Harris's alleged actions have no direct bearing on Howard's claims.

7

### iii.   Request for Production 10

Howard also seeks to compel Defendants to produce "all correspondence between/among Harris, Brickhouse, and Deitemeyer (among all three or between any two)" from October 1, 2012 to the present. D.E. 14 at 11. Defendants argue that this tenth request for production is not relevant to Howard's claims. After review, the court denies Howard's motion to compel these documents.

Litigants may not use the discovery process as a "fishing expedition." *Sandcrest Outpatient Servs., P.A. v. Cumberland Cty. Hosp. Sys., Inc.*, 853 F.2d 1139, 1147 (4th Cir. 1988). Discovery must be relevant to a party's claims or defenses, Fed. R. Civ. P. 26(b)(1) (2014), and, in employment discrimination cases, "should be 'reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct.'" *Rodger v. Elec. Data Sys., Corp.*, 155 F.R.D. 537, 540 (E.D.N.C. 1994) (quoting *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618–19 (D.D.C. 1983)).

Here, the request for "all correspondence between/among Harris, Brickhouse, and Deitemeyer" is overbroad because it requires Defendants to produce documents regardless of whether they are related to the subject matter of Howard's claims. *See Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 121 (N.D. Ind. 1991) (finding that a request for "all writings relating to … any clean-ups, removal actions … remedial actions … remedial investigation or feasibility study involving [defendant]" was a fishing expedition, in part, because the request would require the defendant to produce documents "regardless of whether the circumstances surrounding such action would bear any similarity to the subject matter of [the] case" (internal quotations omitted)). Furthermore, Howard seeks documents from October 1, 2012, to the

present, even though COA employed him for a much narrower time frame—May 1, 2013, to November 15, 2013 (D.E. 5-1 at ¶¶ 7–8). Howard fails to explain why this elongated timeframe in his request for production is appropriate. Therefore, the court denies Howard's motion to compel regarding his tenth request for production.

### c. Plaintiff's Motion to Disqualify (D.E. 14)

In his Motion to Compel, Plaintiff also requests that the court disqualify John Leidy, Defendants' counsel, and his firm because Leidy is a "fact witness." D.E. 14 at 16; D.E. 14-1 at 1. Defendants argue that Leidy and his firm should not be disqualified because Leidy is not a material witness. The court agrees.

Although courts have discretion to grant motions to disqualify, *United States v. Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996), attorney disqualification is a drastic and disfavored remedy. *Robert Woodhead, Inc. v. Datawatch Corp.*, 934 F. Supp. 181, 183 (E.D.N.C. 1995). In deciding a motion to disqualify, courts must "avoid overly-mechanical adherence to disciplinary cannons at the expense of litigants' rights [to] freely … choose their counsel; and … remain mindful of the opposing possibility of misuse of disqualification motions for strategic motions." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992). Furthermore, courts "must balance '(1) the right of a party to retain counsel of his choice; and (2) the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system' …." *Hepburn v. Workplace Benefits, LLC*, No. 5:13-CV-441-BO, 2014 WL 1513157, at *2 (E.D.N.C. Apr. 16, 2014) (quoting *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 514, 517 (M.D.N.C. 1996)).

Civil attorney conduct in the Eastern District of North Carolina is governed by Local Civil Rule 83.1(j), which incorporates the North Carolina Rules of Professional Conduct.

Howard's motion appears to be based on Rule 3.7 of the North Carolina Rules of Professional Conduct, which states that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue … (3) disqualification of the lawyer would work substantial hardship on the client." N.C. Rules of Prof'l Conduct 3.7(a). An attorney is a "necessary witness" when "(1) the attorney will give evidence material to the issues to be determined; (2) the evidence cannot be obtained elsewhere; and (3) the testimony is prejudicial or may be prejudicial to the testifying attorney's client." *Ohio Cas. Ins. Co. v. Firemen's Ins. Co. of Washington, D.C.*, No. 5:07-CV-149-D, 2008 WL 441840, at *2 (E.D.N.C. Feb. 13, 2008) (citing *Metro. P'ship, Ltd. v. Harris*, No. 3:06CV522-W, 2007 WL 2733707, at *2 (W.D.N.C. Sept. 17, 2007)).[4]

Howard contends that Leidy and his firm should be disqualified because he "discussed with Mr. Leidy the potential personnel action against [Mr. D[5]] along with the document that [he] was under coercion to sign." D.E. 14-2 at 1; D.E. 14 at 16. This assertion appears to be in connection with Howard's claim of wrongful termination in violation of the North Carolina

---

[4] The court notes that in 2012, the North Carolina Court of Appeals held that an attorney is a necessary witness under Rule 3.7(a) of the North Carolina Rules of Professional Conduct when the attorney's testimony is "relevant, material, and unobtainable by other means." *State v. Rogers*, 219 N.C. App. 296, 304, 725 S.E.2d 342, 348, *disc. review denied*, 366 N.C. 232, 731 S.E.2d 171 (2012). However, while a federal court may adopt state rules of professional conduct, the application of those rules is a question of federal law and state court interpretations are not binding. *See United States v. Plumley*, 207 F.3d 1086, 1095 (8th Cir. 2000); *Grievance Comm. for S. Dist. of New York v. Simels*, 48 F.3d 640, 645 (2d Cir. 1995); *McCallum v. CSX Transp., Inc.*, 149 F.R.D. 104, 108 (M.D.N.C. 1993). Accordingly, the undersigned applies the attorney necessary witness test developed by federal law. *See Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994) ("[B]ecause motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law.").

[5] "Mr. D" was a subordinate of Howard's. The parties refer to him as "Mr. D" because his personnel situation is confidential under § 115D-29 of the General Statutes of North Carolina. *See* D.E. 15 at 2 n.1.

ethical rules for Certified Public Accountants ("CPAs"). *See* D.E. 5-1 at ¶¶ 151, 153–54 (alleging that he was terminated for failing to comply with a demand to falsify a personnel letter in violation of Chapter 8 of Title 21 of the North Carolina Administrative Code, which prohibits CPAs from "falsely sign[ing] documents or bear[ing] false witness"). North Carolina recognizes wrongful termination in violation of public policy as an exception to the at-will employment doctrine. *See Deerman v. Beverly Ca. Corp*, 135 N.C. App. 1, 5, 518 S.E.2d 804, 806–07 (1999). However, the exception "should be adopted only with substantial justification grounded in compelling considerations of public policy." *Id.* at 5, 518 S.E.2d at 807 (quoting *Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 334, 493 S.E.2d 420, 423 (1997) (internal quotation marks omitted)). Thus, in order to prove his claim of wrongful termination in violation of public policy, Howard must prove (1) that he was terminated for failing to sign a personnel document and (2) his termination violated the public policy of North Carolina as set out by Chapter 8 of Title 21 of the North Carolina Administrative Code.

Leidy's testimony can only be applicable to the first part of the inquiry: whether Howard was terminated for failing to sign a personnel document. The court must therefore determine whether Leidy's testimony on that issue is material, is unobtainable by other means, and is prejudicial or may be prejudicial to his clients. *See Ohio Cas. Ins. Co. v. Firemen's Ins. Co. of Washington, D.C.*, No. 5:07-CV-149-D, 2008 WL 441840, at *2 (E.D.N.C. Feb. 13, 2008). Leidy drafted an email in response to a question from Suzanne Rohrbaugh, the then Vice President of Workforce Development and Continuing Education at COA. D.E. 17-21 at ¶¶ 1, 8. Rohrbaugh and Wendy Brickhouse, the COA Human Resources Director, were concerned that Mr. D—a current COA employee who had applied for a supervisory position and did not receive an interview—might interfere with the search and selection process because he had contacted a

member of the selection committee to ask why he was not selected for an interview. D.E. 17-2 at ¶¶ 1, 10; D.E. 17-21 at ¶ 8. Leidy recommended that Mr. D's supervisor (Howard) send Mr. D a cease-and-desist email and provided a draft of the email. D.E. 17-21 at ¶ 8; D.E. 17-4 at 1. When Rohrbaugh and Brickhouse asked Howard to send the email, he refused (D.E. 17-21 at ¶¶ 9, 10, 13) and discussed his concerns with Leidy (D.E. 17-22 at 4). Ultimately, Brickhouse sent the email to Mr. D with slight modifications made by Leidy (D.E. 17-2 at ¶ 14). Accordingly, Leidy is able to testify about the circumstances surrounding the creation of the email, whether he drafted an email or a letter,[6] his conversation with Howard, and the changes he made to the email.

Leidy's testimony on the aforementioned issues is either immaterial or obtainable from other sources. The potential testimony regarding Leidy's conversation with Howard is not material to the question of whether Howard was fired for failing to sign the document. Additionally, Leidy's potential testimony on the circumstances surrounding the creation of the email, whether he drafted an email or a letter, and the changes he made to the email is available from Rohrbaugh and Brickhouse. D.E. 17-2 at ¶¶ 10–18; D.E. 17-21 at ¶¶ 5–11; *see also* D.E. 14 at 8 ("There are [four] witnesses known to Plaintiff that Plaintiff discussed the personnel action and the written letter—not an email—with."). Brickhouse can also testify to the changes that were made between the draft email and the email that she sent to Mr. D. D.E. 17-2 at ¶ 14. Accordingly, the court denies Howard's motion to disqualify Leidy and his firm.

---

[6] Howard asserts that he was never asked to send an email. D.E. 17 at 5–6. However, Defendants contend that the only document at issue is the email that Leidy drafted in response to Rohrbaugh's concerns about Mr. D. *Id.*

#### d. Defendants' Motion to Compel (D.E. 26)

Defendants seek to compel Howard to produce his office and clinical records from Allie Thomas-Fannin, M.D.; David Crummett, M.D.; and Phillip Ruppert, Ph.D—Howard's treating providers identified in his response to Defendants' first discovery request. Defendants also seek to amend the Scheduling Order to allow them to depose Howard's providers within thirty days from the delivery of Howard's medical records. Finally, Defendants request that the court extend the dispositive motion deadline and enter a qualified protective order. After review, the court grants Defendants' motion.

A party's medical records are both relevant and discoverable when the party places their physical and mental health in issue by seeking compensatory damages for violations of the Americans with Disabilities Act ("ADA") or for medical, mental, or emotional damages. *See, e.g.*, *Fulmore v. United Parcel Serv., Inc.*, Nos. 7:11-CV-18-F, 7:11-CV-91-F, 2012 WL 6608613, at *3 (E.D.N.C. Dec. 18, 2012) ("The case law is clear that by seeking damages for emotional- and medical-related damages plaintiffs have placed their mental and medical health in issue, and rendered discoverable relevant information and documents relating to their mental and medical health."); *Jimoh v. Charlotte-Mecklenburg Hous. P'ship, Inc.*, No. 3:08-CV-495-RJC-DCK, 2009 WL 4062881, at *1 (M.D.N.C. Nov. 20, 2009) ("A party claiming compensatory damages for emotional distress, pain and suffering, and mental anguish puts her mental and physical condition at issue and must produce requested medical records."); *Butler v. Burroughs Wellcome, Inc.*, 920 F. Supp. 90, 92 (E.D.N.C. 1996) ("In an action under the ADA, a plaintiff's medical history is relevant in its entirety."). Howard placed his physical and mental health in issue by seeking damages for intentional infliction of emotional distress and violations of the ADA. Accordingly, Defendants' motion to compel is granted and Howard is directed to produce

his records within 15 days of entry of this order. The court will enter a separate qualified protective order governing Howard's medical records.

The court also grants Defendants' request to amend the Scheduling Order. All discovery requests shall be served in time to be completed by Wednesday, September 28, 2016, and all dispositive motions shall be filed no later than Friday, October 28, 2016. All other aspects of the scheduling order remain unchanged.

### e. Plaintiff's Motion to Amend Scheduling Order (D.E. 30) & to Compel Defense to Allow Deposition of Attorney (D.E. 30)

Howard requests that the court extend the discovery period and increase the number of allowed depositions. Defendants argue that Howard has not shown good cause for his request. After review, the court denies Howard's motion to amend the scheduling order.

A scheduling order may be amended for good cause and with consent from the court. Fed. R. Civ. P. 16(b)(4) (2014). The good cause standard focuses "on the diligence of the party seeking modification of the scheduling order," *Neighbors Law Firm, P.C. v. Highland Capital Mgmt.*, No. 5:09-CV-352-F, 2011 WL 238605, at *2 (E.D.N.C. Jan. 24, 2011) (internal quotation marks omitted), and is met if the court concludes that the moving party acted diligently in compliance with the scheduling order, *see Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (unpublished) (per curiam); *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997) ("Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."). The moving party bears the burden of showing that good cause exists for the amendment. *See Cook*, 484 F. App'x at 815.

Howard asserts that more depositions are needed because "Defendants have prohibited potential witnesses under their control from speaking to [him]" and have "referred to persons— not expected by [him] to be involved—as having relevant information." D.E. 30 at 1–2.

14

However, Howard provides not support for this allegation. Additionally, he did not complete any depositions until the last week of discovery. *See* Scheduling Order, D.E. 13 at 2 ("All discovery shall be concluded by June 24, 2016."); Exh. 1, D.E. 33-1 at 1–4 (emails between the parties confirming Howard's deposition schedule for the week of June 20, 2016); Audio Tr. at 1:57:02–10 (asserting that Howard took six depositions the week of June 20, 2016). As such, Howard did not act diligently in compliance with the scheduling order and cannot establish good cause for his proposed amendment. The court therefore denies his motion to amend the Scheduling Order.

### f. Plaintiff's Motion to Compel Defense to Allow Deposition of Attorney (D.E. 30)

Howard seeks an order compelling Defendants to allow him to depose their attorney, John Leidy. Defendants contend that Howard's motion to compel the deposition of Leidy is premature.[7] After review, the court denies Howard's motion.

A party wishing to depose another person "must give reasonable written notice to every other party." Fed. R. Civ. P. 30(b)(1) (2014). The notice must state the time and the place of the deposition, the method of recording the testimony, and, if known, the deponent's name and address. Fed. R. Civ. P. 30(b)(1), (b)(3)(A) (2014). Howard fails to show that he gave Defendants and Leidy the required written notice. Additionally, Howard has completed all six of his allowed depositions, *see* Scheduling Order, D.E. 13 at 2 (allowing a maximum of six depositions by each party); Audio Tr. at 1:57:02–10 (asserting that Howard completed six depositions), and the court has denied his request to depose more individuals. Therefore, the court denies Howard's motion to compel the deposition of Leidy.

---

[7] The court notes that the standard for deposing an attorney is similar to the standard for disqualifying an attorney. *See Buyer's Direct Inc. v. Belk, Inc.*, No. 5:10-CV-65-H, 2012 WL 3278928, at *2 (noting that when a party wishes to depose an opposing party's attorney as a fact witness, "his or her deposition may be both necessary and appropriate." (quoting *Carr v. Double T. Diner*, 272 F.R.D. 431, 435 (D. Md. 2010)) (internal quotation marks omitted)).

## III. Conclusion

For the foregoing reasons, the undersigned orders the following:

1. Defendants' Motion to Strike (D.E. 21) is granted. Plaintiff's Replies are stricken from the record and shall not be considered by the Court.

2. Plaintiff's Motion to Compel (D.E. 14) is granted in part and denied in part. Defendants are directed to produce

    a. the entirety of Howard's personnel records to him within 15 days of the entry of this order. If Defendants have already produced any of the aforementioned documents, they are certify to Howard in writing that they have done so within 15 days of entry of this order.

    b. Deitemeyer's personnel records to the court for in camera review within seven days of entry of this order. The documents should be bates stamped and submitted to the court in electronic format at Documents_USMJ_Numbers@nced.uscourts.gov.

3. Plaintiff's Motion to Disqualify (D.E. 14) is denied.

4. Defendants' Motion to Compel (D.E. 26) is granted. Plaintiff is directed to produce his complete office and clinical records from Allie Thomas-Fannin, M.D.; David Crummett, M.D.; and Phillip Ruppert, Ph.D from May 1, 2013, to the present within 15 days of entry of this order. Alternatively, Plaintiff may execute and deliver to Defendants' counsel a properly executed and notarized HIPAA Authorization Form in the form requested by Defendants' counsel within five days of entry of this order. Plaintiff's providers are directed to comply with this Order promptly upon delivery of it to them by U.S. Mail, fax, overnight

16

delivery service, or other personal delivery. The court will enter a separate HIPAA-compliant protective order to protect Plaintiff's medical records.

5. The Scheduling Order is amended as follows: All discovery requests shall be served in time to be completed by Wednesday, September 28, 2016, and all dispositive motions shall be filed no later than Friday, October 28, 2016. All other aspects of the scheduling order, including the number of depositions each party may take, remain unchanged.

6. Plaintiff's Motion to Amend Scheduling Order (D.E. 30) is denied.

7. Plaintiff's Motion to Compel Defense to Allow Deposition of Attorney (D.E. 30) is denied.

Dated: August 16, 2016

_Robert T Numbers II_

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE